1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   KIMBERLY R OLSON,                    No. CIV S-06-2064-MCE-CMK

12              Plaintiff,

13        vs.

14   ADAM ORECK, et al.,

15              Defendants.

16   _____/

17   PETER T. HARRELL,                    No. CIV S-07-0847-MCE-CMK

18              Plaintiff,

19        vs.                            FINDINGS AND RECOMMENDATIONS

20   ADAM ORECK, et al.,

21              Defendants.

22   _____/

23              Plaintiffs, who are proceeding pro se, bring these related civil rights actions

24   alleging claims under 42 U.S.C. §§ 1983 and 1985, Bivens v. Six Unknown Named Agents of

25   Federal Bureau of Narcotics, 403 U.S. 388 (1971), and various state law tort theories.  In case no.

26   CIV-S-06-2064-MCE-CMK, plaintiff Olson names the following as defendants:  Oreck, Schack,

                                          1

1   Riggins, Weston, Siskiyou County Sheriff's Department, and Montgomery.  In case no. CIV-S-

2   07-0847-MCE-CMK, plaintiff Harrell names the following as defendants: Oreck, Schack,

3   Riggins, Bigler, Weston, Siskiyou County Sheriff's Department, and Montgomery.  Plaintiff

4   Olson does not name Bigler as a defendant in case no. CIV-S-06-2064-MCE-CMK.  In both

5   cases, the United States of America has been substituted as a defendant in place of Montgomery

6   pursuant to 28 U.S.C. § 2679(d)(1).  The court will refer to defendants Oreck, Schack, Riggins,

7   Bigler, Weston, and Siskiyou County Sheriff's Department collectively as "County Defendants."

8            Pending before the court are the following:  (1) motion to dismiss filed by County

9   Defendants (except Bigler) in case no. CIV-S-06-2064-MCE-CMK (Doc. 12); (2) motion to

10  dismiss filed by defendant United States of America  in case no. CIV-S-06-2064-MCE-CMK

11  (Docs. 28 and 29); (3) motion to dismiss filed by County Defendants in case no. CIV-S-07-0847-

12  MCE-CMK (Doc. 11); (4) motion to dismiss by defendant United Stated of America in case no.

13  CIV-S-07-0847 (Docs. 26 and 27); and (5) plaintiff Harrell's motion for sanctions in case no.

14  CIV-S-07-0847-MCE-CMK (Doc. 31).

15           Plaintiff Olson filed oppositions to both motions to dismiss filed in her case

16  (Docs. 17 and 32).  Plaintiff Harrell filed an opposition to defendant United States of America's

17  motion in his case (Doc. 30), but did not file an opposition to County Defendants' motion.

18

19                          **I. BACKGROUND**

20  **A.**    **Plaintiffs' Allegations**

21       Plaintiff Olson alleges:

22       Plaintiff Kimberly R. Olson is a disabled adult within the meaning
         of State and Federal law.  Plaintiff became disabled as a result of injuries
23       sustained in a car accident as a teenager, and subsequent numerous spinal
         surgeries.  As a result of these injuries and surgeries, Plaintiff suffers
24       extremely limited mobility, chronic and severe episodes of muscle
         spasticity [sic], chronic pain, and depression.  In order to provide for her
25       personal care and other necessities of life, Plaintiff, during the period
         relevant to this Complaint, had contracted with Peter Harrell to provide in-
26       home care and assistance to her in exchange for his room and board during

                                    2

1   those times he was present in Yreka to attend school at the local college.

2   On or about October 28, 2004, Defendants Adam Oreck and Chris Schack arrived at Plaintiff's abode, located at 6431 Old Hwy. 99, #50, in Yreka, CA, County of Siskiyou with a purported legal warrant to search

3   the premises. Plaintiff, although not named anywhere in the warrant, or in the supporting affidavit, was not allowed to leave the residence.

4   The defendants searched everywhere and everything in the home without regard to any limitations imposed by the warrant, legal authority,

5   probable cause, or who may have owned the property subject to their ministrations, and seized items of Plaintiff's personal property that were

6   not even described in the illegal, general warrant. Much property belonging to Plaintiff's caregiver, Peter Harrell, was also searched and

7   seized. Although some of the property seized clearly belonged to Plaintiff Olson, and indeed, this is even noted at one place on the search warrant

8   receipt, only Harrell was asked by the defendants to sign the search warrant receipt, or given a receipt for the items seized by the defendants.

9   On March 30, 2005, in the Superior Court of California, Siskiyou County case #MCYKCRF04 (the State action against Harrell arising as a

10   result of the fruits of the search warrant) was dismissed by motion of the People of the State of California.

11   On April 22, 2005, Peter Harrell filed a motion regarding the October 28, 2004, search and seizure to "traverse/quash search warrant

12   and for return of property illegally seized: in Siskiyou County Superior Court case MCYKCRF04-2507. This motion was granted on May 11,

13   2005, by Judge Roger Kosel of the Superior Court, County of Siskiyou, pursuant to Penal Code section 1538.5.

14   Rather than obey the order of the Court, Defendants Weston, Schack, John Does, and Montgomery conspired to illegally transfer

15   physical custody of the seized property via a subpoena to Defendant Montgomery for transport to a Sacramento holding facility, thus

16   attempting to deprive the State Court of any further jurisdiction, while also depriving the Plaintiff and Harrell of the property that had been ordered

17   returned.

18   Harrell subsequently filed in the United States District Court, Eastern District of California, a FRCrimP 41(e) motion for return of this

19   property in case CIV-S-05-1784-DFL-CMK, which morphed into a motion to suppress when an indictment was issued six months later against Harrell

20   (case number CR-S-05-0475-LKK). Finding that the affidavit and warrant did not meet constitutional standards, and that no reasonable reliance upon

21   the warrant could have been made by the officers, Federal Judge Lawrence K. Karlton granted the motion to suppress on July 25, 2006.

22   Plaintiff Harrell alleges the same underlying facts. He adds in his complaint:

23   Plaintiff duly noticed the governmental entity of his pending claims against them as required by the California Government Code, and

24   additionally submitted a supplemental claim to them on or about May 1, 2007, encompassing additional tortuous [sic] acts and damages by the

25   Defendants occurring after the first notice.

26   / / /

1    Plaintiffs claim these facts give rise to two various constitutional violations.

2    Specifically, they assert defendants' conduct resulted in a violation of their Fourth Amendment

3    right to be free from illegal searches and seizures of their persons and property, and a violation of

4    their Fourteenth Amendment rights to due process and equal protection.  Plaintiffs allege that the

5    individual defendants acted in furtherance of policies and practices promulgated by defendant

6    Siskiyou County Sheriff's Department.  In addition, plaintiffs claim defendants Riggins and

7    Siskiyou County Sheriff's Department failed to properly train and supervise defendants Oreck

8    and Schack.  Finally, plaintiffs assert state law tort claims for negligence, false arrest, false

9    imprisonment, and negligent and intentional infliction of emotional distress.

10   **B.    Other Federal Actions**

11   As plaintiffs indicate, two prior actions in this court relate to the instant civil

12   actions.  These cases are Harrell v. Montgomery, et al., case no. CIV-S-05-1784-LKK-CMK,[1]

13   and United States v. Harrell, CR-S-05-0475-LKK.   In the federal criminal case (case no. CR-S-

14   05-0475-LKK), the district judge set forth the following background in a May 1, 2007, order

15   granting Harrell's motion for return of property:

16   On October 27, 2004,[2] the Siskiyou County Sheriff's office,
     pursuant to a search warrant, seized various items of personal property
17   from the residence of Peter Harrell (defendant).  On July 25, 2006, the
     court granted defendant's motion to suppress the evidence seized from his
18   residence.  On December 7, 2006, the criminal case against defendant was
     dismissed.  Defendant now seeks to have returned to him property
19   consisting of satellite television receivers, DISH "smartcards," and other
     related electronics, CDs, computers, and hard drives.
20

21   The court granted Harrell's motion in part and denied it in part.  The criminal case was dismissed

22   on December 7, 2006, and the court subsequently dismissed the civil case (case no. CIV-S-05-

23   1784-LKK-CMK) as moot.

24   _____

25   [1]    The civil case was reassigned from Judge Levi to Judge Karlton on January 18,
     2006, pursuant to an order relating the case with the criminal case.

26   [2]    According to plaintiffs, the search warrant was executed on October 28th.

As to the motion to suppress, Harrell attacked the search warrant, arguing:  (1) the affidavit supporting the search warrant contained insufficient probable cause to believe a crime had been committed; (2) the affidavit contained insufficient probable cause to believe the evidence sought was the fruit or instrumentality of a crime; (3) the search warrant was overbroad; and (4) the search warrant was based upon knowing and intentional false statements or omissions.  In granting the motion, Judge Karlton found that the search warrant was invalid.

## II.  STANDARDS FOR MOTION TO DISMISS

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In considering a motion to dismiss under this standard, the court must accept all allegations of material fact as true.  See Erickson v. Pardus, 127 S.Ct. 2197 (June 4, 2007).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 2007 WL 1461066, slip op. at *8 (2007).  Allegations of specific facts are not necessary so long as the statement of facts gives the defendant fair notice of what the

1 claim is and the grounds upon which it rests.  See Erickson, 127 S.Ct. at 2197.

2        To determine whether a complaint states a claim upon which relief can be granted,

3 the court generally may not consider materials outside the complaint and pleadings.  See Cooper

4 v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.

5 1994).  The court may, however, consider: (1) documents whose contents are alleged in or

6 attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454;

7 (2) documents whose authenticity is not in question, and upon which the complaint necessarily

8 lies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668,

9 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice,

10 see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson

11 v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

12        Under these standards, a statute of limitations defense may be raised in a motion

13 to dismiss.  Leave to amend a deficient complaint must be granted ". . . [u]nless it is absolutely

14 clear that no amendment can cure the defects."  Lucas v. Dep't of Corrections, 66 F.3d 245, 248

15 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en

16 banc).

17

18 **III.  DISCUSSION**

19        All defendants move to dismiss both actions.  In case no. CIV-S-06-2064-MCE-

20 CMK, County Defendants (except Bigler, who is not named in that action), raise the following

21 arguments in support of dismissal of the complaint:

22       1.    Plaintiff's state law tort claims are barred by failure to comply with the
           California Tort Claims Act (Point 1);

23

24       2.    Plaintiff fails to state a claim against defendant Weston (Point 2);

25       3.    Plaintiff fails to state a claim against defendant Siskiyou County Sheriff's
           Department (Point 3);

26 / / /

4.      Defendants cannot be held liable for a policy of the State of California (Point 4);

5.      Plaintiff fails to state an equal protection claim (Point 5);

6.      Plaintiff fails to state a Fourth Amendment claim based on improper detention (Point 6);

7.      Plaintiff fails to state a due process claim based on improper seizure of property (Point 7);

8.      Plaintiff fails to state a claim of conspiracy (Point 8);

9.      Defendant Weston is immune from suit (Point 9);

10.     Plaintiff cannot recover punitive damages against defendant Siskiyou County Sheriff's Department (Point 10);

11.     Plaintiff's state law tort claims are barred by California Government Code immunities (Point 11); and

12.     The court lacks supplemental jurisdiction over plaintiff's state law tort claim because she fails to state any federal claims (Point 12).

In case no. CIV-S-07-0847-MCE-CMK, County Defendants raise the following arguments:

1.      Plaintiff's state law tort claims are barred by failure to comply with the California Tort Claims Act (Point 1);

2.      Plaintiff's state law tort claims and federal claims are barred by the statute of limitations and tolling does not apply (Points 2, 3, 4, 5, and 6 );

3.      Plaintiff fails to state a claim against defendant Weston (Point 7);

4.      Plaintiff fails to state a claim based on delivery of property to the federal grand jury (Point 8);

5.      Plaintiff fails to state a claim based on malicious prosecution (Point 9);

6.      Plaintiff fails to state a claim against defendant Siskiyou County Sheriff's Department (Point 10);

7.      Defendants cannot be held liable for a policy of the State of California (Point 11);

8.      Plaintiff fails to state an equal protection claim (Point 12);

9.      Plaintiff fails to state a Fourth Amendment claim based on improper seizure of property (Point 13);

10.     Plaintiff fails to state a claim of conspiracy (Point 14);

7

12.    Defendant Weston is immune from suit (Point 15);

13.    Plaintiff cannot recover punitive damages against defendant Siskiyou County Sheriff's Department (Point 16);

14.    Plaintiff's state law tort claims are barred by California Government Code immunities (Point 17); and

15.    The court lacks supplemental jurisdiction over plaintiff's state law tort claim because she fails to state any federal claims (Point 12).

In both cases, defendant United States of America argues:  (1) plaintiffs' claims are barred because defendant's agent, Mark Montgomery, is entitled to qualified immunity; and (2) plaintiffs' claims are barred by failure to comply with the Federal Tort Claims Act.

### A.    Plaintiff Harrell's Claims

County Defendants argue that all of plaintiff Harrell's claims in case no. CIV-S-07-0847-MCE-CMK – both state and federal – are barred by the applicable statutes of limitations.  As to plaintiff's Harrell's federal claims, they argue that, because the federal claims are brought under 42 U.S.C. § 1983, the applicable statute of limitations is California's two-year statute of limitations for personal injury actions set forth in California Code of Civil Procedure § 355.1.  They are correct.  See Wallace v. Kato, 127 S.Ct. 1091, 1094-95 (2006); Wilson v. Garcia, 471 U.S. 261, 280 (1875); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  Here, defendants argue that, because plaintiff Harrell's action was filed on May 3, 2007 – more than 2 years after the October 28, 2004, incident giving rise to his claims – the federal claims are all barred and must be dismissed.  In reaching this conclusion, defendants argue under Wallace v. Kato that no tolling provisions apply to the timeliness of the federal claims.

In Wallace, police officers transported Wallace to the police station for questioning into the shooting death of John Handy.  See 127 S.Ct. at 1094.  After interrogation, Wallace agreed to confess to Handy's murder.  See id.  Wallace was subsequently convicted of first-degree murder and sentenced to 26 years in state prison.  See id.  On direct appeal, the court

reversed the conviction, concluding that officers arrested Wallace without probable cause, in violation of the Fourth Amendment.  See id.  Eventually, prosecutors dropped the charges against Wallace.  See id.  After the charges were dropped, Wallace filed a § 1983 suit seeking damages arising from the unlawful arrest.  See id.  The Seventh Circuit Court of Appeals ultimately concluded that Wallace's claim was time-barred because it accrued when he was arrested, not when the conviction was later set aside.  See id.; seel also Wallace v. Chicago, 440 F.3d 421, 427 (7th Cir. 2006).

Regarding accrual of a § 1983 claim, the Supreme Court held that "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."  See Wallace, 127 S.Ct. at 1095.  The Court, however, noted a "refinement to be considered" arising from the common law's treatment of the tort of false imprisonment, which is detention without legal process.  See id. (citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)).  Because a plaintiff may not be able to bring suit for false imprisonment while still imprisoned, the Court stated that the limitations period begins to run when the alleged false imprisonment ends.  See Wallace, 127 S.Ct. at 1095-96.  The Court further stated that a false imprisonment ends when the plaintiff becomes held pursuant to legal process – "when, for example, he is bound over by a magistrate or arraigned on charges."  See id.  As to the related tort of false arrest (also called malicious prosecution), which requires both absence of legal process and wrongful institution of legal process in the first place, damages for that tort cover the time of detention up until issuance of process.  See id.  After that, any damages are based on a claim of false arrest and cannot be based on the detention itself.  See id. (citing Heck, 512 U.S. at 484).  The Court, therefore, concluded that Wallace's § 1983 claim accrued – and the statute of limitations began to run – when he was bound over for trial.  See Wallace, 127 S.Ct. at 1097.

/ / /

/ / /

/ / /

1    The Court then considered the concept of "deferred accrual" discussed in <u>Heck</u>.

2  <u>See</u> <u>id.</u>  In <u>Heck</u>, the Supreme Court concluded that a § 1983 claim which necessarily implies the

3  invalidity of an underlying criminal judgment cannot accrue until the criminal judgment has been

4  reversed, set aside, expunged, invalidated, or called into question on federal habeas review.  <u>See</u>

5  <u>id.</u> (citing <u>Heck</u>, 512 U.S. at 486-87).  The <u>Heck</u> deferred accrual rule only comes into play when

6  there is an outstanding criminal judgment (i.e., one that has not been reversed, set aside,

7  expunged, invalidated, or called into question).  <u>See</u> <u>Wallace</u>, 127 S.Ct. at 1097-98.  If a plaintiff

8  files a § 1983 action while a criminal case from which the civil claim arises is still pending (i.e.,

9  before the plaintiff has been convicted), the district court has the discretion to stay the action

10  until the criminal case is ended.  <u>See</u> <u>id.</u>  Of course, depending on the result of the criminal case,

11  the deferred accrual rule might apply.  In other words, if the case is resolved in the plaintiff's

12  favor, then there would be no deferred accrual.  Otherwise, accrual would be deferred.

13    Another complication was also considered by the Supreme Court because some

14  § 1983 claims – such as Wallace's claim for false imprisonment (as opposed to false arrest,

15  which was the claim considered in <u>Heck</u>) – can accrue even before the commencement of a

16  criminal action against the plaintiff.  <u>See</u> <u>id.</u> at 1098.  The Supreme Court stated:

17    . . . That of course is the case here, and it raises the question whether,
       assuming that the <u>Heck</u> bar takes effect when the later conviction is
18     obtained, the statute of limitations on the once valid cause of action is
       tolled as long as the <u>Heck</u> bar subsists.  In the context of the present case:
19     If [Wallace's] conviction on April 19, 1996, caused the statute of
       limitations on his (possible) impugning but yet-to-be-filed [§ 1983] cause
20     of action to be tolled until that conviction was set aside, his filing here
       would have been timely.

21     <u>Id.</u>

22

23  The Court concluded that, in such a circumstance, no tolling would apply.  <u>See</u> <u>id.</u> at 1099.

24  ///

25  ///

26  ///

1    In this case, plaintiff Harrell's federal claims are based on the conduct of the

2 police officers on October 28, 2004, and are akin to the claim in <u>Wallace</u> in that Harrell asserts a

3 constitutional violations arising from execution of an invalid warrant.  Thus, under <u>Wallace</u>, the

4 statute of limitations on plaintiff Harrell's federal claims began to run when he was bound over

5 for trial on the charges arising from the arrest.  While he does not state in his complaint when

6 state criminal charges were brought against him, plaintiff Harrell does state that he filed a motion

7 to "traverse/quash search warrant" on April 22, 2005.  Thus, the action must have been pending

8 sometime before that date.  Because no tolling applies, plaintiff Harrell would have had to file his

9 § 1983 action sometime before April 22, 2007 – two years after the date the claims accrued.

10 Because the action was filed on May 3, 2007, the federal claims are time-barred.

11    As discussed above, all of plaintiff Harrell's federal claims are barred and must be

12 dismissed.  Because he cannot present to this court any timely federal claims, the court declines

13 to exercise supplemental jurisdiction over any of plaintiff Harrell's state law tort claims.  <u>See</u> 28

14 U.S.C. § 1367(c)(3); <u>Herman Family Revocable Trust v. Teddy Bear</u>, 254 F.3d 802, 806 (9th Cir.

15 2001); <u>Levald, Inc. v. City of Palm Desert</u>, 998 F.2d 680, 692 (9th Cir. 1993).

16    Absent any federal timely claims, and absent an exercise of supplemental

17 jurisdiction to hear plaintiff Harrell's state law tort claims, plaintiff Harrell's action should be

18 dismissed in its entirety and the court need not address the remainder of defendants' arguments in

19 case no. CIV-S-07-0847-MCE-CMK.[3]

20 / / /

21 / / /

22 / / /

23

24    [3]    The court has considered and rejects the arguments raised in plaintiff Harrell's
October 22, 2007, motion (Doc. 31 in case no. CIV-S-07-0847-MCE-CMK).  In that motion,
25 plaintiff Harrell argues that County Defendants' motion should be stricken and Rule 11 sanctions
should be imposed due to alleged "misstatements of law" and "misstatements of fact."  In
26 essence, plaintiff's motion is a late-filed opposition to County Defendants' motion to dismiss and
raises no persuasive arguments.

1    **B.    Plaintiff Olson's Claims**

2          Plaintiff Olson asserts violations of her Fourth and Fourteenth Amendment rights.

3    Specifically, she asserts that both her person and her property were subject to an improper search

4    and seizure under the Fourth Amendment because the search warrant was invalid.  She also

5    asserts that the improper search and seizure violated her rights under the Fourteenth Amendment

6    to due process and equal protection.  Plaintiff Olson also claims defendants conspired to violate

7    her civil rights with respect to Montgomery's transfer of property to Sacramento pursuant to a

8    subpoena. Finally, she asserts various state law tort claims.

9          1.    Fourth Amendment Claims

10          County Defendants (except Bigler, who is not named in Plaintiff Olson's action)

11   argue that plaintiff Olson cannot state any claims based on improper detention because

12   "[d]etention during the execution of a search warrant does not constitute a deprivation sufficient

13   to support a claim under 42 U.S.C. § 1983."[4]   Defendants cite Michigan v. Summers, 452 U.S.

14   692 (1981), and Muehler v. Mena, 544 U.S. 93 (2005), in support of their argument.

15          In Michigan v. Summers, the Supreme Court described the facts as follows:

16          As Detroit police officers were about to execute a warrant to search a
             house for narcotics, they encountered [Summers] descending the front
17          steps.  They requested his assistance in gaining entry and detained him
             while they searched the premises.  After finding narcotics in the basement
18          and ascertaining that [Summers] owned the house, the police arrested him,
             searched his person, and found in his coat pocket an envelope containing
19          8.5 grams of heroin.

20          452 U.S. at 693.

21   / //

22   / / /

23   / / /

24   ───────────────

25          [4]    They do not challenge plaintiff Olson's Fourth Amendment claim based on
     improper seizure of property belonging to plaintiff Olson.  Defendants' argument is limited to
26   plaintiff Olson's Fourth Amendment claim regarding her detention incident to execution of the
     search warrant.

1 The Court first concluded that Summers' detention constituted a "seizure" within the meaning of

2 the Fourth Amendment.  See id. at 696.  According to the Supreme Court, the dispute in the case

3 involved only the constitutionality of the pre-arrest detention.  See id.  The Court also observed:

> Of prime importance in assessing the intrusion [caused by the pre-arrest
> detention of Summers] is the fact that the police had obtained a warrant to
> search [Summers'] house for contraband.  A neutral and detached
> magistrate had found probable cause to believe that the law was being
> violated in that house and had authorized a substantial invasion of the
> privacy of the persons who resided there.

> Id. at 701.

9 Finally, the Court assumed for purposes of its analysis that the pre-arrest detention was

10 unsupported by probable cause, but never reached any conclusion with respect to the validity of

11 the underlying search warrant.  See id. at 696.  In fact, the Court's analysis is premised on the

12 validity of the underlying warrant.  See id. at 702 (assessing the justification for a detention

13 pursuant to a valid warrant).  The Court ultimately held that Summers' pre-arrest detention did

14 not violate his Fourth Amendment rights.  See id. at 705-06.

15 In Muehler v. Mena – which arose in the context of a § 1983 civil rights case –

16 Mena was detained in handcuffs during a search of the premises he occupied.  See 544 U.S. at

17 95.  The police were executing a search warrant.  See id.  Mena sued under § 1983 alleging

18 violations of her civil rights.  See id.  The trial court and Ninth Circuit both concluded that

19 Mena's detention while the search warrant was being executed violated her rights under the

20 Fourth Amendment.  See id.  The Supreme Court reversed pursuant to its holding in Michigan v.

21 Summers.  See id.  As to the search warrant, the Supreme Court recited the following facts:

> Based on information gleaned from the investigation of a gang-related,
> driveby shooting, petitioner's Muehler and Brill had reason to believe at
> least one member of a gang – the West Side Locos – lived at 1363 Patricia
> Avenue.  They also suspected that the individual was armed and
> dangerous, since he had recently been involved in the driveby shooting.
> As a result, Muehler obtained a search warrant . . . .

> Id.

1  There was never any determination that the search warrant was invalid.  The Supreme Court

2  concluded that Mena's § 1983 claim failed because "[a]n officer's authority to detain incident to

3  a search is categorical; it does not depend on the 'quantum of proof justifying detention or the

4  extent of the intrusion to be imposed by the seizure.'"  Id. at 98 (citing Michigan v. Summers,

5  452 U.S. at 705).

6          Plaintiff Olson's case is distinguishable from these cases in that the search warrant

7  executed at the Olson residence was determined to be invalid.  Defendants do not address this

8  critical distinction in their motion.  The court concludes that, while defendants are correct that

9  detention during the execution of a valid warrant is not actionable under § 1983, detention during

10 execution of an invalid warrant may be.  The issue in this case is not whether plaintiff Olson

11 could have been detained incident to execution of a search warrant, but whether she was detained

12 incident to execution of a valid warrant.  After all, the purpose of § 1983 is to provide a remedy

13 for violations of civil rights, such as would be expected in situations where a search warrant is

14 not valid and would not be expected where it is valid.  Therefore, County Defendants' motion to

15 dismiss plaintiff Olson's Fourth Amendment claim based on her detention as not cognizable

16 should be denied.

17          2.    Due Process Claims

18          County Defendants (except Bigler) also argue that plaintiff Olson cannot state any

19 due process claim based on deprivation of property because an adequate post-deprivation remedy

20 exists.[5]  Plaintiff Olson does not respond to this particular argument in her opposition.

21 ///

22 ///

23 ///

24

25          [5]      They do not challenge plaintiff Olson's due process claim based on improper
seizure of her person.  Therefore, the court is not being asked to decide whether defendants'
26 argument would also apply to that aspect of plaintiff Olson's claim.

1       Where a plaintiff alleges the deprivation of a liberty or property interest caused by

2  the unauthorized action of a government official, there is no claim cognizable under 42 U.S.C.

3  § 1983 if the state provides an adequate post-deprivation remedy.  See Zinermon v. Burch, 494

4  U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984).  A state's post-

5  deprivation remedy may be adequate even though it does not provide relief identical to that

6  available under § 1983.  See Hudson, 468 U.S. at 531 n.11.  An available state common law tort

7  claim procedure to recover the value of property is an adequate remedy.  See Zinermon, 494 U.S.

8  at 128-29.

9       In this case, plaintiff's due process claim based on deprivation of property is not

10  cognizable under § 1983 because adequate post-deprivation remedies exist.  Specifically,

11  plaintiff Olson could have availed herself of the same state court process plaintiff Harrell used to

12  request return of his property.[6]  Further, plaintiff Olson had access to the California Tort Claims

13  Act process in state court for compensation for deprivation of her property.[7]  Therefore, the court

14  finds that plaintiff's due process property claim should be dismissed.

15              3.    Equal Protection Claim

16       Plaintiff Olson asserts that defendants' conduct violated her equal protection

17  rights under the Fourteenth Amendment.  County Defendants (except Bigler) argue that, at best,

18  plaintiff Olson's complaint should be seen as pleading a "class of one" because she has not

19  alleged she is a member of a protected group for equal protection purposes.  See Griffin v.

20  Breckinridge, 403 U.S. 88, 102, 103 (1971); Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

21  The court agrees.  It is clear from plaintiff Olson's complaint that she has not alleged she is a

22  member of a protected class.  Next, defendants argue that plaintiff Olson's "class of one" equal

23  protection claim fails because she has not alleged that she was intentionally treated differently

24 ───────────────

25     [6]     It is unclear whether or not plaintiff Olson did, in fact, participate in that process.

26     [7]     That she apparently chose to forego that process in favor of presenting her state
   law tort claims in this action is not relevant to the availability of the state process.

1   from similarly situated individuals or that there was no rational basis for the difference in

2   treatment.  See Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004).  Again,

3   the court agrees.  Plaintiff Olson has not alleged intentional disparate treatment and the

4   background facts alleged do not suggest such an intention could be plead.[8]

5               4.    Conspiracy Claim

6               Plaintiff Olson alleges that defendants engaged in a conspiracy to deprive her of

7   her civil rights, in violation of 42 U.S.C. § 1985, with respect to the transfer of property to an

8   agent of the Federal Bureau of Investigation pursuant to a subpoena.  County Defendants (except

9   Bigler) argue that, because such conduct is proper, see United States v. Dionisio, 410 U.S. 1, 9

10  (1973), there could have been no conspiracy to violate a constitutional right.  The court agrees.

11              5.    Municipal Liability for Federal Claims

12              County Defendants (except Bigler) argue that plaintiff Olson has failed to state a

13  claim against defendant Siskiyou County Sheriff's Department, which is a municipal entity.

14  Municipalities and other local government units are among those "persons" to whom § 1983

15  liability applies.  See Monell v. Dep't of Soc. Serv's., 436 U.S. 658, 690 (1978).  Counties and

16  municipal government officials are also "persons" for purposes of § 1983.  See id. at 691; see

17  also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989).  A local

18  government unit, however, may not be held responsible for the acts of its employees or officials

19  under a respondeat superior theory of liability.  See Bd. of County Comm'rs v. Brown, 520 U.S.

20  397, 403 (1997).  Thus, municipal liability must rest on the actions of the municipality, and not

21  of the actions of its employees or officers.  See id.  To assert municipal liability, therefore, the

22  plaintiff must allege that the constitutional deprivation complained of resulted from a policy or

23  custom of the municipality.  See id.  A claim of municipal liability under § 1983 is sufficient to

24  withstand dismissal even if it is based on nothing more than bare allegations that an individual

25

26          [8]    Plaintiff Olson's contention that defendants acted intentionally is not the same as alleging that their intent was to treat her differently.

16

1  defendant's conduct conformed to official policy, custom, or practice.  See Karim-Panahi, 839

2  F.2d at 624.

3          In this case, plaintiff Olson alleges:

4                  Further, the acts of Defendants Oreck and Schack as aforesaid were
           the result of, and in furtherance of, a policy, practice or custom endorsed
5          and promulgated by these Defendants, as well as Rick Riggins, and
           Siskiyou County Sheriff's Department.  It is also alleged that these
6          defendants recklessly, negligently and/or willfully failed to properly train
           and supervise Defendants Oreck and Schack, and that this failure to
7          properly train and supervise these defendants was a proximate cause of the
           injuries suffered by the Plaintiff.

8

9  Defendants argue:  "Plaintiff pleads very generally that defendants acted pursuant to some policy,

10  practice, or custom of the remaining defendants when they did what she complains about."  As

11  defendants concede, plaintiff has at least made a bare allegation that at least one individual

12  defendant's conduct conformed to an official policy, custom, or practice.  See id.  Thus, plaintiff

13  Olson's claim against Siskiyou County Sheriff's Office survives dismissal.

14                      6.      California Tort Claims Act

15          County Defendants (except Bigler) argue that plaintiff Olson's state law tort

16  claims are insufficient because she has failed to allege compliance with the California Tort

17  Claims Act.  Specifically, defendants contend that California Government Code §§ 905, 910,

18  911.2, 945.4, 950.2, and 950.6 require plaintiff to "allege compliance with the claims filing

19  requirements . . . and a rejection of that claim."  Defendants' position is supported by California

20  law.  Specifically, in Tietz v. Los Angeles United School Dist., the court concluded that

21  "[a]ppellant's failure to allege that [a California Tort Claims Act] claim was presented subjected

22  the complaint to a general demurrer."   238 Cal.App.2d 905, 911 (2nd Dist. 1965); see also

23  Dennis v. Thurman, 959 F. Supp. 1253, 1264 (C.D. Cal. 1997) (citing Karim-Panahi, 839 F.2d at

24  627)).  In Dennis, the court concluded that the plaintiff's allegation that he "filed with the Clerk

25  of the State Board of Control for damages" was sufficient to meet the requirements of the

26  California Tort Claims Act.  See 959 F. Supp. at 1264.  By contrast, in this case plaintiff Olson

1   has alleged no facts concerning compliance with the California Tort Claims Act.[9]  Therefore, her

2   state law tort claims are subject to dismissal for failure to allege compliance with the California

3   Tort Claims Act.

4                     7.   <u>California Government Code Immunities</u>

5                   County Defendants (except Bigler) argue that immunities afforded

6   governmental entities and employees under California law bar plaintiff Olson's state law tort

7   claims as against defendants Oreck, Schack, Riggins, and Siskiyou County Sheriff's Department.

8   Specifically, defendants assert that, under California Government Code §§ 815 and 815.2,

9   defendant Siskiyou County Sheriff's Department is not liable for its acts or omissions or those of

10  its employees unless an employee who is not immune would be liable otherwise.  They assert in

11  turn that none of the state employee defendants named by plaintiff Olson are liable because they

12  are immune under California Government Code §§ 820.2 and 821.6.  Thus, according to County

13  Defendants, they are all immune.  Under California law, defendants are correct to the extent they

14  acted in their official capacities.  <u>See</u> <u>Baughman v. State of California</u>, 38 Cal.App.4th 182, 193

15  (2nd Dist. 1995).  Because plaintiff Olson complains of actions by defendants in their official

16  capacities (i.e., executing a search warrant), they are immune from suit, at least with respect to

17  plaintiff Olson's state law tort claims.

18                    8.   <u>Prosecutorial Immunity</u>

19                  County Defendants (except Bigler) contend that defendant Weston – a deputy

20  district attorney – enjoys absolute prosecutorial immunity from liability arising out of the conduct

21  alleged in plaintiff Olson's complaint.  Prosecutorial immunity protects eligible government

22  officials when they are acting pursuant to their official role as advocate for the state.  <u>See</u> <u>Imbler</u>

23  <u>v. Pachtman</u>, 424 U.S. 409, 430 (1976).  This immunity extends to actions during both the pre-

24  trial and post-trial phases of a case.  <u>See</u> <u>Demery v. Kupperman</u>, 735 F.2d 1139, 1144 (9th Cir.

25

26        [9]      Interestingly, plaintiff Harrell did in his complaint.

1  1984).  State prosecutors are entitled to absolute prosecutorial immunity for acts taken in their

2  official capacity.  See Kalina v. Fletcher, 522 U.S. 118, 123-25 (1997).

3          In this case, plaintiff Olson alleges:

4                  At all times material, Defendant Gregory Weston was an officer,
                employee, and agent of the Siskiyou County District Attorney's Office,

5                  and was acting under the color of law and of his office as an assistant
                district attorney.

6

7  Thus, it is clear from plaintiff Olson's allegations, that defendant Weston is alleged to have acted

8  solely in his official capacity as a deputy district attorney.  As such, he is immune.  Plaintiff

9  attempts to plead around this by alleging:

10                 . . . Since the acts by Weston as outlined in this Complaint were taken by
                him after the dismissal of any criminal case he may have been advocating

11                 for . . . Weston's acts are not covered by prosecutorial immunity.

12 This allegation is unavailing because prosecutorial immunity applies even to actions after

13 conclusion of a case as long as they are part of the defendant's function as an advocate for the

14 state.  As indicated by plaintiff Olson herself, defendant Weston acted "at all times" in his

15 capacity as an assistant district attorney.  She cannot have it both ways.

16         9.    Qualified Immunity

17         Plaintiff Olson raises various factual allegations with respect to Special Agent

18 Mark Montgomery, an agent of the Federal Bureau of Investigation.  Defendant United States of

19 America, who has been substituted as a defendant in place of Montgomery, argues that there can

20 be no liability for Montgomery's conduct because he is entitled to qualified immunity.

21         Government officials enjoy qualified immunity from civil damages unless their

22 conduct violates "clearly established statutory or constitutional rights of which a reasonable

23 person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

24 qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

25 law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

26 immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting

1    the injury, the facts alleged show the defendant's conduct violated a constitutional right.  <u>See</u>

2    <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next

3    step is to ask whether the right was clearly established.  <u>See id.</u>  This inquiry "must be undertaken

4    in light of the specific context of the case, not as a broad general proposition . . . ."  <u>Id.</u>  "[T]he

5    right the official is alleged to have violated must have been 'clearly established' in a more

6    particularized, and hence more relevant, sense:  The contours of the right must be sufficiently

7    clear that a reasonable official would understand that what he is doing violates that right."  <u>Id.</u> at

8    202 (citation omitted).  Thus, the final step in the analysis is to determine whether a reasonable

9    officer in similar circumstances would have thought his conduct violated the alleged right.  <u>See</u>

10   <u>id.</u> at 205.

11          When identifying the right allegedly violated, the court must define the right more

12   narrowly than the constitutional provision guaranteeing the right, but more broadly than the

13   factual circumstances surrounding the alleged violation.  <u>See Kelly v. Borg</u>, 60 F.3d 664, 667

14   (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be

15   sufficiently clear that a reasonable official would understand [that] what [the official] is doing

16   violates the right."  <u>See Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  Ordinarily, once the

17   court concludes that a right was clearly established, an officer is not entitled to qualified

18   immunity because a reasonably competent public official is charged with knowing the law

19   governing his conduct.  <u>See Harlow v. Fitzgerald</u>, 457 U.S. 800, 818-19 (1982).  However, even

20   if the plaintiff has alleged a violation of a clearly established right, the government official is

21   entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his .

22   . . conduct did not violate the right."  <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 651 (9th Cir.

23   2001); <u>see also Saucier</u>, 533 U.S. at 205.

24   / / /

25   / / /

26   / / /

20

1       The first two steps in the qualified immunity analysis involve purely legal

2   questions.  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a

3   legal determination based on a prior factual finding as to the government official's conduct.  See

4   Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  In resolving these issues, the court must

5   view the evidence in the light most favorable to plaintiff and resolve all material factual disputes

6   in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

7       The first step in the qualified immunity analysis is identification of the right

8   allegedly violated.  As a starting point, the court notes the following allegations as to

9   Montgomery:

10          At all times material, Defendant Mark Montgomery was an officer,
        employee, and agent of the Federal Bureau of Investigation, and was
11          acting under the color of law and of his office as a Special Agent.

12                          * * *

13          Rather than obey the order of the [Siskiyou County Superior]
        Court, Defendants Weston, Schack, John Does, and Montgomery
14          conspired to illegally transfer physical custody of the seized property via a
        subpoena to Defendant Montgomery for transport to a Sacramento holding
15          facility, thus attempting to deprive the State Court of any further
        jurisdiction, while also depriving the Plaintiff and Harrell of the property
16          that had been ordered returned.

17  Based on these allegations, the court concludes that plaintiff Olson alleges that Montgomery

18  acted improperly by transporting the property to Sacramento pursuant to a subpoena issued to

19  him.  It is well-established that delivery of evidence pursuant to a subpoena is an acceptable

20  procedure and does not constitute a seizure under the Fourth Amendment.  See Dionisio, 410

21  U.S. at 9.  Therefore, the court finds that Montgomery's conduct could not have violated any of

22  plaintiff Olson's constitutional rights.  As such, there can be no liability arising from his conduct

23  under the doctrine of qualified immunity.[10]

24  / / /

25  _____

26      [10]     It is not necessary to address defendant United States of America's other
    arguments regarding compliance with the Federal Tort Claims Act.

10.   Punitive Damages

Finally, County Defendants (except Bigler) argue that punitive damages are not available against defendant Siskiyou County Sheriff's Department and the individual defendants acting in their official capacities, and they seek dismissal of that portion of plaintiff Olson's claim for damages.  Defendants are correct.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  Because plaintiff only sues the individual defendants in their individual capacities on all claims, and because her state law tort claims are all barred for the reasons discussed above, plaintiff Olson may not recover any punitive damages in this action.

## IV.  CONCLUSION

For the reasons discussed above, the court concludes that plaintiff Harrell's action, case no. CIV-S-07-0847-MCE-CMK, should be dismissed in its entirety.  As to plaintiff Olson's action, case no. CIV-S-06-2064-MCE-CMK, the court concludes that the motions to dismiss brought by County Defendants (except Bigler, who is not named in that action) and defendant United States of America should be granted in part and denied in part in the following respects

1.   Plaintiff Olson's Fourth Amendment claims based on seizures of both her person and property should remain;

2.   Plaintiff Olson's Fourteenth Amendment due process claim based on deprivation of her property should be dismissed, without leave to amend, but her Fourth Amendment due process claim based on seizure of her person should remain;

3.   Plaintiff Olson's Fourteenth Amendment equal protection claim should be dismissed, without leave to amend;

4.   Plaintiff Olson's 42 U.S.C. § 1985 conspiracy claim should be dismissed, with prejudice;

5.   Defendant Weston should be dismissed, with prejudice, due to prosecutorial immunity as to all claims;

6.   Defendant United States of America should be dismissed, with prejudice, due to qualified immunity as to all claims;

22

7.     Plaintiff Olson's state law tort claims against all remaining defendants (Oreck, Schack, Riggins, and Siskiyou County Sheriff's Department) should be dismissed, with prejudice, due to California Government Code immunities;

8.     Plaintiff should not be permitted to recover punitive damages in this action; and

9.     Plaintiff Olson's action should be allowed to proceed as against defendants Oreck, Schack, Riggins, and Siskiyou County Sheriff's Department on the surviving Fourth Amendment and Fourteenth Amendment claims for money damages only.

Based on the foregoing, the undersigned recommends that:

1.     County Defendants' motion to dismiss in case no. CIV-S-07-0847-MCE-CMK (Doc. 11) be granted;

2.     Case no. CIV-S-07-0847-MCE-CMK be dismissed in its entirety;

3.     Defendant United States of America's motion to dismiss in case no. CIV-S-07-0847-MCE-CMK (Docs. 26 and 27) de denied as moot;

4.     County Defendants' (except Bigler) motion to dismiss in case no. CIV-S-06-2064-MCE-CMK (Docs. 12) be granted in part and denied in part as outlined above;

5.     Defendant United States of America's motion in case no. CIV-S-06-2064-MCE-CMK (Docs. 28 and 29) be granted;

6.     Defendants Weston and United States of America be dismissed, and the Clerk of the Court be directed to terminate them on the court's docket for case no. CIV-S-06-2064-MCE-CMK; and

7.     Defendants Oreck, Schack, Riggins, and Siskiyou County Sheriff's Department be required to file an answer to plaintiff Olson's complaint in case no. CIV-S-06-2064-MCE-CMK.

/ / /

/ / /

/ / /

1    These findings and recommendations are submitted in case nos. CIV-S-06-2064-

2  MCE-CMK and CIV-S-07-0847-MCE-CMK to the United States District Judge assigned to the

3  case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with

4  these findings and recommendations, any party may file written objections with the court.  The

5  document should be captioned "Objections to Magistrate Judge's Findings and

6  Recommendations."  Failure to file objections within the specified time may waive the right to

7  appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8

9

  DATED:  January 11, 2008

10                                                      _____

11                                                      **CRAIG M. KELLISON**
                                                        UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26